UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIEARA GASKIN, DENISE MILLER and TENIA
STUCKEY, individually, on behalf of all others
similarly situated and on behalf of the proposed Rule
23 Class,

                                        Plaintiffs,

-against-

SCE GROUP INC. doing business as SIN CITY
CABARET, KONSTANTINE ("GUS")
DRAKOPOULOS and KEVIN WELLS,

                                        Defendants.

**COMPLAINT**

14 Civ. 09877 (RA) (RLE)

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

**ECF CASE**

Plaintiffs Kieara Gaskin, Denise Miller and Tenia Stuckey ("Plaintiffs"), individually, on

behalf of all others similarly situated and on behalf of the proposed Rule 23 Class, upon personal

knowledge as to themselves and upon information and belief as to other matters, by and through

their attorneys, Lipman & Plesur, LLP, for their Complaint against Defendants SCE Group Inc.

doing business as Sin City Cabaret ("Sin City Cabaret"), Konstantine ("Gus") Drakopoulos and

Kevin Wells (collectively "Defendants") , allege as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs complain individually and on behalf of all others similarly situated, who

are currently or formerly employed by Defendants as entertainers or possibly in other titles that

they are owed: (i) minimum wages, (ii) overtime premium pay and (iii) liquidated damages

pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (hereinafter referred to as the

"FLSA").

2.      Plaintiffs further complain pursuant to Fed. R. Civ. Proc. 23, individually, on

behalf of all others similarly situated and on the behalf of the proposed Rule 23 Class of current

and former entertainers of Defendants, and bring this Class Action against Defendants claiming that they are owed additional wages and amounts from Defendants for failure to pay minimum wages, overtime premium pay, spread of hours pay, unlawful deductions from wages under the New York State Hospitality Wage Order, N.Y. Comp. Codes R. & Regs., tit. 12, §§ 146 et seq., the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, and the New York Labor Law §§ 190 *et seq.* (hereinafter collectively referred to as the "NYLL") as well as for Defendants failing to provide wage notices and statements pursuant to the NYLL.

3.      Plaintiffs further complain pursuant to Fed. R. Civ. Proc. 23 on behalf of themselves, and a putative class of other similarly situated current and former employees of Defendants who worked as entertainers and possibly in other titles, that they were harassed due to their gender, otherwise treated differently with respect to the terms, conditions and privileges of employment and subjected to a pattern and practice of such unlawful discrimination and a hostile work environment because of their gender in violation of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (hereinafter referred to as the "NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (hereinafter referred to as the "NYCHRL").

4.      Plaintiffs further complain on behalf of themselves that they were harassed due to their race, otherwise treated differently with respect to the terms, conditions and privileges of employment and subjected to a pattern and practice of such unlawful discrimination and a hostile work environment because of their race in violation of the NYSHRL and the NYCHRL and  the Civil Rights Act of 1866, , 42 U.S.C. § 1981 *et seq.* and reference is made to Section 1981 in its entirety and to 42 U.S.C. §§ 1981, 1981(a), 1988 and 1988(b) ("Section 1981").

## JURISDICTION AND VENUE

5.      Plaintiffs invoke the jurisdiction of this Court pursuant to the FLSA and Section 1981, and the supplemental jurisdiction statute, 28 U.S.C. § 1367, in that the state and federal claims arise from a common nucleus of operative facts such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

6.      The venue of this action is proper because the events or omissions giving rise to the claims occurred within, and Defendants conduct business within, the Southern District of New York.

## PARTIES

**Plaintiffs**

7.      Plaintiff Kieara Gaskin is an adult individual who is a resident of New Jersey.

8.      Plaintiff Gaskin worked as an entertainer at Sin City Cabaret from in or about November 2007 to October 2009 and May 2012 to July 2013.

9.      Plaintiff Denise Miller is an adult individual who is a resident of Pennsylvania.

10.     Plaintiff Miller worked as an entertainer at Sin City Cabaret from in or about January 2013 to September 2013.

11.     Plaintiff Tenia Stuckey is an adult individual who is a resident of Maryland.

12.     Plaintiff Stuckey worked as an entertainer at Sin City Cabaret from in or about 2008 to in or about April 2013.

13.     As detailed below, Plaintiffs Gaskin, Miller and Stuckey and others similarly situated are current and former employees of Defendants within the meaning of the FLSA, 29 U.S.C. S. 203(e)(1) as well as the NYSHRL, NYCHRL and NYLL.

3

**Defendants**

14.     Defendant Sin City Cabaret is headquartered at 2520 Park Avenue, Bronx, New York and, *inter alia*, operates Sin City Cabaret.

15.     As detailed below, Defendant Sin City Cabaret was Plaintiffs' employer pursuant to the proposed Rule 23 Class under the FLSA, 29 U.S.C. § 201, *et seq.*, as well as the NYLL, NYSHRL and NYCHRL.

16.     Defendant Sin City Cabaret employed Plaintiffs, similarly situated individuals, and members of the proposed Rule 23 Class at all times relevant to this Complaint.

17.     Defendant Konstantine "Gus" Drakopoulos ("Defendant Drakopoulos") is an owner and officer of Defendant Sin City Cabaret.  Defendant Drakopoulos is sued individually and in his capacity as an owner, officer, joint employer and/or agent of Defendant Sin City Cabaret.

18.     Defendant Drakopoulos is a principal, agent, partner, joint venturer, controlling shareholder of Defendant Sin City Cabaret, and/or is engaged with the other Defendants in a joint enterprise for profit, and bore such other relationships to the other Defendants so as to be liable for their conduct.

19.     Upon information and belief, Defendant Drakopoulos manages the day-to-day operations, controls or is involved in hiring and firing, determines the hours of operation and is an employer and/or supervisor pursuant to the FLSA, Section 1981, NYLL, NYSHRL and the NYCHRL.

20.     Defendant Drakopoulos has responsibility for Defendants' wage-hour policies and practices, including, but not limited to, time-keeping, compensation policies,  policies governing

the allocations of tips/and or gratuities, and the policies set forth in the employee guidelines that applied to employees at Sin City Cabaret.

21.     Defendant Kevin Wells ("Defendant Wells") serves as a Manager and is employed by Defendant Sin City Cabaret.  Defendant Wells is sued individually and in his capacity as a joint employer and/or agent of Defendant Sin City Cabaret.

22.     Defendant Wells manages the day-to-day operations, controls or is involved in hiring and firing, discipline, setting wages and deductions from wages and has responsibility for the policies set forth in the employee guidelines that applied to employees at Sin City Cabaret, is an employer and/or supervisor of the Plaintiffs and others similarly situated and is an employer and/or supervisor pursuant to the FLSA, Section 1981, NYLL, NYSHRL and the NYCHRL.

## FACTUAL ALLEGATIONS

**Facts Establishing Each Defendant Is An "Employer" Under Federal, New York and New York City Human Rights Laws and Federal and New York Wage-Hour Laws and That All Defendants Operate As A Joint Employer Of Plaintiffs**

### SCE Group Inc. doing business as Sin City Cabaret

25.     Defendant Sin City Cabaret's annual gross volume of sales made or business done is not less than $500,000.  Defendant Sin City Cabaret also operates in interstate commerce, by, *inter alia*, selling liquor at the Sin City Cabaret which has traveled in interstate commerce.

### Defendant Konstantine ("Gus") Drakopoulos

25.     Defendant Sin City Cabaret's CEO is Defendant Drakopoulos.

26.     Defendant Drakopoulos and Defendant Wells handle day-to-day management at Sin City Cabaret and routinely address work related issues that impact the entertainers.

27.     Defendants Drakopoulos and/or Wells set the amount of the "house fee" that entertainers are required to pay in order to work.

28.     Defendant Drakopoulos participates in supervising and evaluation of the clubs' managers, and assists managers when they have questions or concerns about day-today operations.

29.     Defendant Drakopoulos is involved with hiring and firing, establishing and managing all wage, disciplinary and workplace rules, and enforcing the entertainer rules and guidelines.

**Defendant Kevin Wells**

30.     Upon information and belief, Defendant Wells is the General Manager.

31.     Defendant Wells participates in and manages the hiring, firing and supervising, establishes and manages wages and all labor policies and assists other managers when they have questions or concerns about day-to-day operations.

32.     Defendant Wells is directly responsible for hiring and firing entertainers, for disciplining them, and for enforcing the entertainer guidelines and rules.

33.     Defendants and the managers are also responsible for making sure there are enough entertainers and other employees scheduled to work at the Sin City Cabaret on nights that a large customer turnout is expected.

### Facts Establishing Plaintiffs and Others Similarly Situated are Employees.

34.     Defendants wield control over the classification of members of the putative collective and Rule 23 Class and designate all entertainers as independent contractors.

35.     Defendants exercised a great degree of control over Plaintiffs, those similarly situated, and members of the proposed Rule 23 Class. This control was exhibited, in part, through enforcement of a set of rules and guidelines which were posted at the workplace and communicated verbally to the entertainers.

6

36.     Defendants supervise entertainers by imposing fines and other discipline on entertainers.

37.     The primary job duties of Plaintiffs, those similarly situated, and the proposed Rule 23 Class consisted of dancing on stage during the stage rotation, performing personal dances (also called "lap dances" ) for customers and spending time with customers in semi-private rooms.

38.     Defendants required Plaintiffs, those similarly situated, and the proposed Rule 23 Class to dance on stage according to a stage rotation established by the managers or disc jockey ("DJ"). Entertainers were put into the stage rotation and were required to dance at the time their name was called.

39.     Some examples of the rules and guidelines which have been enforced at Sin City Cabaret are rules which:

    a.      Require entertainers to clock in upon arrival;

    b.      Require that entertainers pay "house fees" prior to beginning to work;

    c.      Require that entertainers pay fees to the "house moms" at the end of each shift;

    d.      Require that entertainers wear shoes of a certain type and with heels of a certain height;

    e.      Require that entertainers wear make-up and have their hair done;

    f.      Require that entertainers not weigh more than a certain amount and subject them to periodic weigh-ins on scales and penalties or suspension or termination if weight guidelines are not met;

    g.      Require that entertainers use a different bathroom than club patrons;

7

h.     Require that entertainers dance on stage and for no more than the length of three consecutive songs;

i.     Require entertainers to take no more than one hour to get ready after arrival;

j.     Require that entertainers wear approved "stripper outfits" and not outside clothes;

k.     Require that entertainers work at least one "slow" shift each week;

l.     Require entertainers to pay fines for violation of guidelines;

m.     Require entertainers to continue working until close;

n.     Require entertainers not to chew gum;

o.     Require entertainers to work a full shift and not leave early; and,

p.     Require entertainers to engage in specified activities with customers for specified time periods.

40.     Plaintiffs, those similarly situated, and the proposed Rule 23 Class were told by Defendants that they were only allowed to have one knee on the floor at a time and were not allowed to dance while lying down.

41.     Plaintiffs, those similarly situated, and the proposed Rule 23 Class were usually not allowed to choose the songs that were played while they were dancing on stage.

42.     Defendants set the price and length of lap dances.  The price and length were the same for a lap dance regardless of which entertainer performed the dance.  Plaintiffs, those similarly situated, and the proposed Rule 23 Class were not allowed to charge a different price for a lap dance than the price established by Defendants.

8

43.     Plaintiffs, those similarly situated, and the proposed Rule 23 Class were generally required to charge customers $20.00 for a lap dance.  If a customer did not want to pay for the dance using U.S. currency, entertainers were required by Defendants to allow the customer to pay for the dance using "Sin City" dollars.

44.     Twenty Sin City dollars are coupons that cost the customer, upon information and belief, $23.00.  At the end of each shift or at times, during the shift, Plaintiffs, those similarly situated, and the proposed Rule 23 Class exchanged the Sin City dollars for U.S. currency and were paid $17.00 by Defendants for each of the Sin City dollars they cashed in.

45.     As entertainers, Plaintiffs, those similarly situated, and the proposed Rule 23 Class spent time in private or semi-private rooms with customers.  The price paid for time in private rooms was set by Defendants and was the same regardless of which entertainer was spending time in the private room with the customer(s).

46.     Defendants were in charge of all advertising for the club.

47.     Plaintiffs did not engage in any other employment during the time period they worked for Defendants and worked for Defendants on a full-time basis.

48.     Plaintiffs did not contribute money towards maintaining Defendants' club premises or otherwise provide facilities at the club.

49.     Plaintiffs were economically dependent on Defendants.

50.     Plaintiffs did not have an investment in any business and had no risk of financial loss by working as entertainers.

51.     Plaintiffs were either not permitted or strongly discouraged from working as entertainers for any other establishment.

52.     Plaintiffs were not shareholders or officers of Defendants.

9

53.     Plaintiffs, those similarly situated, and members of the proposed Rule 23 Class are dependent on customers' tips, making their opportunity for earning wages a function of how much money customers have and are willing to spend and how much money Defendants required entertainers to pay in order to work.

54.     Defendants do not require that entertainers at their club have dance training or experience working as entertainers at other clubs.

55.     Defendants require entertainers to enter an amateur contest in order to be hired; however, an entertainer's physical appearance, not any level of dance, performance or sales skill, determines her suitability to perform at Defendants' club.

56.     Entertainers are hired to work for an indefinite period at the club and can be fired at-will.

57.     Entertainers, at times, work more than 40 hours in a work week at Sin City Cabaret.

58.     One of Defendants' business primary purposes is to give customers the opportunity to see women in various stages of undress.

59.     Upon information and belief, a large share of Defendants' revenue sources were comprised of "service revenues" which include the shift fees paid by entertainers to secure their employment with Defendants and the share of gratuities paid by customers to entertainers taken by Defendants.

60.     Entertainers performed at Defendants' club, using Defendants' stages and semi-private rooms.

61.     Entertainers were not allowed to hire subcontractors to perform their duties for them. The right to dance as an entertainer at Defendants' club was a personal right, and only

people who were hired by Defendants' managerial staff were allowed to perform at Defendants' club.

## FACTS ESTABLISHING A HOSTILE WORK ENVIRONMENT BASED ON GENDER AND/OR RACE

### Facts Establishing Sexual Harassment

62.     Defendants maintained a sexually hostile workplace where unwelcome acts of a sexual nature were condoned or encouraged.

63.     Plaintiffs, at times, were subjected to improper, touching by Defendant Wells that included, *inter alia*, slapping, grabbing or poking of buttocks, chest and private body parts.

64.     Plaintiffs, at times, were subjected to offensive and improper sexually harassing comments and conduct from Defendants Drakopoulos and Wells and, at times, Defendants requested sexual favors.  For example, Defendant Wells would grab and kiss Plaintiff Gaskin without her permission and refused to stop.  On one occasion, Defendant Wells demanded that Plaintiff Gaskin come to a private area of the club, he held her down and removed her clothes and touched her with his tongue.  Plaintiff Gaskin was able to get away on this occasion.

65.     Plaintiffs were frequently called derogatory names and words, including but not limited to: "bitches, "hos" and "sluts" by the individual Defendants.

66.     Frequently, when Plaintiffs rebuffed  the sexual harassment and made it clear that it was unwelcome, they were retaliated against by being treated more harshly, including, for example, being subjected to assault and battery, even more hostile verbal abuse and additional wage abuses such as being charged very high fines even when they did not purportedly break any of Defendants' rules.

67.    Plaintiffs were subjected to improper sexual harassment, approximately, once per shift and sometimes much more frequently.

68.    Defendants had no policy to address claims of sexual harassment or any other type of discrimination in the workplace.

**Facts Establishing Race Discrimination**

69.    Plaintiffs Gaskin, Miller and Stuckey are all black and/or were considered African-American by Defendants.

70.    Defendants maintained a racially hostile work environment.

71.    Defendant Drakopoulos frequently used the word "nigger" while speaking and made improper racial comments, such as, approximately, the following: "black girls' pussy stinks" or "I am tired of you black bitches" or "we don't want the ghetto element that you attract."

72.    It was well known that entertainers who were dark-skinned generally would not be hired and if they were hired, were only allowed to work during the day when Defendant Drakopoulos was usually not in the club.

73.    Defendants subjected entertainers who were black and/or considered African-American, to disparate treatment. For example, Defendant Wells frequently fined such women for allegedly violating workplace rules whereas non-black and/or African-American entertainers were not subjected to such fines. For example, if a Black or African American entertainer was deemed to be not dancing properly, Defendant Wells would, at times, impose an immediate $50.00 or $100.00 penalty fine and demand payment.

74.    Plaintiffs were subjected to improper racial comments at least once per week.

## FACTS ESTABLISHING MINIMUM WAGE VIOLATIONS UNDER STATE AND FEDERAL LAW AND WAGE NOTICE VIOLATIONS

**General Facts**

75.     Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class have not been paid the minimum wage by Defendants.

76.     Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class are paid no wages by Defendants.

77.     Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class earn money at Defendants' club through tips from the club's customers for dances performed on stage or personal dances (i.e., a lap dance or table dance) in the general area of the club or in semi-private rooms.

78.     Defendants set the prices of personal dances at $20.  Customers were allowed to and did tip entertainers above the $20.

79.     Customers tipped Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class in cash or using Sin City dollars at Defendants' club.

80.     Plaintiffs did not receive a regular hourly wage for their work for Defendants, nor did Plaintiffs receive a salary or any other kind of piece rate compensation for their work for Defendants.

81.     Plaintiffs never received a pay check or payroll statement from Defendants.

82.     If Plaintiffs did not receive cash or Sin City dollars from customers, they would not be paid any amount whatsoever for the time they spent working for Defendants.

83.     Especially on a slow night or due to large fines, entertainers sometimes made no or very little money when working for Defendants.

84.     Plaintiffs were not provided with a wage notice informing them of their wage rate.

13

## FACTS ESTABLISHING THAT CASH PAID IN EXCHANGE FOR SIN CITY DOLLARS DOES NOT COUNT AS WAGES

85.     Defendants do not pay Plaintiffs, all others similarly situated and the proposed Rule 23 Class; rather, entertainers are entirely dependent upon customers to earn money through cash or Sin City dollars.

86.     Customers pay entertainers directly.  In other words, customers do not give Defendants money to give to entertainers but instead give the money to the entertainers.

87.     Customers have no reason to believe that the money they pay entertainers is not fully the entertainers to keep.

88.     Upon information and belief, customers believe that what they pay to the entertainers, whether cash or Sin City dollars, is a gratuity for the sole benefit of the entertainer.

89.     Upon information and belief, Defendants do not record cash tips or Sin City dollars received by entertainers from customers in Defendants' gross receipts.

90.     Upon information and belief, Defendants keep no record of cash payments entertainers receive from customers for dances.

91.     Upon information and belief, Defendants keep no record of the number of lap dances performed by entertainers for customers.

92.     Defendants do not have any ownership interest in the payments made from customers to entertainer for dances; although, Defendants only pay entertainers $17.00 for every Sin City dollar redeemed and require that entertainers pay fees and fines in order to work.

## FACTS ESTABLISHING UNLAWFUL DEDUCTIONS/KICKBACKS CLAIMS UNDER NEW YORK LAW

**Facts Establishing That Entertainers Were Required To Pay Defendants In Order to Work**

93.      Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class are required to pay a "house fee" at the beginning of each shift.

94.      The house fees are and were established by Defendants and ranged from $65.00 to $150.00 per shift.

95.      Each night that they work, Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class are required to pay the House Mom a $10 fee.

96.      Plaintiffs understood that they would not be allowed to work if they did not pay Defendants the required fees.

97.      Defendants charged Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class fines and penalties for alleged misconduct.

98.      For example, Plaintiff Gaskin was charged $50.00 for knocking over a bottle of liquor, $500.00 to return to work after being out and $50.00 for leaving early.

99.      Similarly, Plaintiff Miller was charged $50.00 for not performing a lap dance correctly and $50.00 for not being ready to perform at a certain time.

100.    These are just a few examples of the many fines imposed by Defendants on entertainers for violation of work rules or alleged misconduct.

101.    Defendants have demanded and received payments from Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class by requiring them to pay to Defendants a "house fee" as well as other charges and fees, including fines for violation of disciplinary rules.

## FACTS ESTABLISHING RETENTION OF GRATUITIES

### Facts Establishing That Entertainers Are Not Paid Full Value of Dance Dollars

102.     Sin City dollars are pieces of paper which approximate the size and shape of U.S. currency.

103.     Patrons of Defendants' clubs are informed that each Sin City dollar has a value of $20.00 dollar of US, currency but they are charged $23.00 for each Sin City dollar purchased.

104.     Upon information and belief, some customers are told that the amount in excess of $20.00 charged is a "service fee" but no customers are told that the service fee is not a gratuity.

105.     Patrons of Defendants' clubs provide entertainers with Sin City dollars in exchange for dances or as additional tips.

106.     At the end of or during every shift, Defendants do not exchange entertainers' Sin City dollars for U.S. currency in the amount shown on the face of the Sin City dollar.

107.     Defendants exchange $17.00 U.S. currency for each Sin City dollar turned in by an entertainer.  Guests are not informed that the entertainer will receive only $17.00 for the Sin City dollar.

108.     Plaintiffs, others similarly situated, and members of the proposed Rule 23 Class have all received gratuities from Defendants' patrons in the form of Sin City dollars within the relevant statutory period.

109.     Defendants have demanded and accepted gratuities received by Plaintiffs and members of the proposed Rule 23 Class through the club's policies with respect to Sin City dollars, through the imposition of shift fees and penalties and fines for violations of rules or other misconduct, as well as other requirements regarding the sharing of gratuities.

16

110.    Customers understood amounts they paid to entertainers to be gratuities to the entertainer.

111.    When Plaintiffs, those similarly situated, and the proposed Rule 23 Class would exchange dance dollars for U.S. currency at the end of their shifts, Defendants never asked for the context in which the Sin City dollar was received.

112.    Defendants did not monitor how Sin City dollars were used in the club environment.

113.    Sin City dollars were routinely used for tipping entertainers above the amount of the stated dance price.

114.    Sin City dollars constitute tips and gratuities which were earned by the entertainers, a portion of which was taken by Defendants.

## FLSA COLLECTIVE ACTION

115.    Plaintiffs bring the First Claim for Relief on behalf of: "all persons who worked as 'entertainers' at Defendants at any time three years prior to the filing of this Complaint to the entry of judgment in this case."

116.    Plaintiffs and the FLSA Collective Class are victims of Defendants' widespread, repeated, and consistent illegal policies that have resulted in violations of their rights under the FLSA, 29 U.S.C. § 201 *et seq.*, and that have caused significant damage to Plaintiffs and the FLSA Collective.

117.    Defendants have willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et seq.* as described in this Complaint in ways including, but not limited to, failing to pay employees a minimum wage or overtime premium pay.

17

118.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class.  There are numerous similarly situated current and former employees of Defendants who have suffered from the common policies and plans of Defendants, including being denied a minimum wage and overtime premium pay, and who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

119.    Upon information and belief, those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## RULE 23 CLASS ALLEGATIONS

120.    Class Representatives bring the remaining Claims for Relief, individually, on behalf of all others similarly situated and as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure.  The proposed Rule 23 Class is defined as "all persons who worked for Defendants as 'entertainers' at any time six years prior to the filing of this Complaint to the entry of judgment in the case."

121.    The persons in the proposed Rule 23 Class are so numerous that joinder of all members of the Class is impracticable.  While the precise number of class members has not been determined at this time, upon information and belief, Defendants have employed in excess of two hundred (200) individuals as entertainers during the applicable statute of limitations.  The Class Representatives and members of the proposed Rule 23 Class have been equally affected by Defendants' violations of law.

122.    There are questions of law and fact common to the proposed Rule 23 Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a.    Whether such comments and physical interactions were improper and unlawful such that they constitute sexual harassment?

   b.    Whether the Defendants properly classified the Class Representatives and members of the proposed Rule 23 Class as independent contractors under the NYLL;

   c.    Whether the Defendants failed to pay the Class Representatives and members of the proposed Rule 23 Class a minimum wage or overtime premium pay or Spread of Hours pay in violation of the NYLL;

   d.    Whether the Defendants unlawfully demanded and accepted gratuities and retained a part of gratuities or charges purported to be gratuities in violation of N.Y. Lab. Law § 196-d and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1-3., *et seq.;*

   e.    Whether the Defendants unlawfully deducted employee wages through fines and penalties for misconduct in violation of N.Y. Lab. Law § 193;

   f.    Whether the Defendants failed to provide Wage Notices and Wage Statements; and,

   g.    Whether the Defendants' foregoing conduct constitutes a willful violation of the NYLL.

19

123.    The proper measure of damages sustained by the proposed Rule 23 Class.  The Class Representatives' claims are typical of those of the members of the proposed Rule 23 Class. The Class Representatives, like the other members of the Class, were subjected to Defendants' policies and willful practices of refusing to pay proper wages; unlawfully demanding and accepting gratuities and retaining a part of gratuities or charges purported to be gratuities; and unlawfully deducting employees' wages through fines and penalties for lateness and misconduct. The Class Representatives and members of the proposed Rule 23 Class have sustained similar injuries as a result of the Defendants' actions.

124.    The Class Representatives will fairly and adequately protect the interests of the proposed Rule 23 Class.  The Class Representatives have retained counsel experienced in complex wage and hour class and collective action litigation.  There are no conflicts between the Class Representatives and the Class they seek to represent.

## AS AND FOR A FIRST CAUSE OF ACTION

**Failure To Pay Minimum Wage and Overtime Pursuant To The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. On Behalf Of Plaintiffs And FLSA Collective Class**

125.    Plaintiffs, on behalf of themselves and the FLSA Collective Class, reallege each and every allegation made in paragraphs 1 through 124 of this Complaint.

126.    This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* for failure to pay a minimum wage and overtime premium pay to Plaintiffs and the FLSA Collective Class to which they were entitled.

127.    The minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendants and protect Plaintiffs and the FLSA Collective Class.

128.    Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et seq.*

20

129.     Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage or overtime premium pay to Plaintiffs and the FLSA Collective Class.

130.     By failing to compensate Plaintiffs and the FLSA Collective Class, Defendants violated, and continue to violate, their statutory rights under FLSA, 29 U.S.C. § 206.

131.     The forgoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

132.     Plaintiffs and the FLSA Collective Class, seek damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

133.     Plaintiffs and the FLSA Collective Class, seek recovery of attorneys' fees and costs to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION

**Failure To Pay Minimum Wage and Overtime Pursuant To The NYLL On Behalf Of Class Representatives And Members Of The Rule 23 Class**

134.     Plaintiffs, on behalf of themselves and the members of the proposed Rule 23 Class, reallege each and every allegation made in paragraphs 1 through 133 of this Complaint.

135.     This claim arises from Defendants' willful violation of N.Y. Lab. Law § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1-3., *et seq.*, for failure to pay a minimum wage or required overtime premium pay to the Plaintiffs and the members of the proposed Rule 23 Class to which they were entitled.

136.     The minimum wage and overtime provisions of the NYLL apply to Defendants and protect the Plaintiffs and members of the proposed Rule 23 Class.

21

137.     Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage or required overtime premium pay to the Plaintiffs and the members of the proposed Rule 23 Class.

138.     By failing to pay a minimum wage or overtime premium pay to the Plaintiffs and the members of the proposed Rule 23 Class, Defendants violated, and continue to violate, their statutory rights under the NYLL.

139.     The forgoing conduct, as alleged, constitutes a willful violation of the NYLL.

140.     Plaintiffs and the members of the proposed Rule 23 Class have been damaged in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION

### Spread of Hours, Failure to Keep Adequate Records and Pay for Uniforms

141.     Plaintiffs, on behalf of themselves and the members of the proposed Rule 23 Class, reallege each and every allegation made in paragraphs 1 through 140 of this Complaint.

142.     Defendants failed to (1) pay Plaintiffs and the members of the proposed Rule 23 Class one additional hour at the basic minimum wage rate for each day their spread of hours exceeded ten (10); (2) maintain required records; and, (3) compensate for the purchase and maintenance of required uniforms in violation of NYLL § 190 *et seq.* and § 650 *et seq.* and the Hospitality Wage Order of the New York Commissioner of Labor codified at NYCRR, tit. 12, §§ 146-1, 1-7 and 2.1 and the previous Wage Order for the Restaurant Industry, NYCRR, tit. 12, §§ 137 *et seq.*

143.     The forgoing conduct, as alleged, constitutes a willful violation of the NYLL.

144.     Plaintiffs and the members of the proposed Rule 23 Class have been damaged in an amount to be determined at trial.

22

## AS AND FOR A FOURTH CAUSE OF ACTION

### Unlawful Deductions, Kickbacks and Failure to Pay Gratuities

145.     Plaintiffs, on behalf of themselves and the members of the proposed Rule 23 Class, reallege each and every allegation made in paragraphs 1 through 144 of this Complaint.

146.     Defendants subjected Plaintiffs and the members of the proposed Rule 23 Class to unlawful deductions from wages by imposing fines and requiring payments to work.

147.     Defendants failed to pay entertainers all the gratuities that they earned.

148.     The forgoing conduct, as alleged, constitutes a willful violation of the NYLL.

149.     Plaintiffs and the members of the proposed Rule 23 Class have been damaged in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Failure to Provide Wage Notice and Statements (NYLL § 195)

150.     Plaintiffs, on behalf of themselves and the members of the proposed Rule 23 Class, reallege each and every allegation made in paragraphs 1 through 149 of this Complaint.

151.     Defendants failed to provide wage notices and statements as required by the NYLL.

152.     Plaintiffs and the members of the proposed Rule 23 Class have been damaged in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION

### Violation of the New York State Human Rights Law – Gender Discrimination

153.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege each and every allegation made in paragraphs 1 through 152 of this Complaint.

154.   Defendants had a policy, pattern and practice of condoning and encouraging unwelcome acts and verbal comments of a sexual nature and otherwise fostering a sexually hostile work environment.

155.   Plaintiffs, and all others similarly situated, were forced to work in a sexually hostile work environment and subjected to unlawful discrimination.

156.   The sexual remarks and conduct to which the Plaintiffs, and all others similarly situated, were subjected were both unwelcome and severe or pervasive.

157.   Defendants' sexual harassment and sex discrimination of the Plaintiffs and all others similarly situated, was in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

## AS AND FOR THE SEVENTH CAUSE OF ACTION

### Violation of the New York City Human Rights Law – Gender Discrimination

158.   Plaintiffs, individually and on behalf of all others similarly situated, reallege each and every allegation made in paragraphs 1 through 157 of this Complaint.

159.   Plaintiffs, and all others similarly situated, were forced to work in a sexually hostile work environment and subjected to unlawful discrimination.

160.   Defendants' sexual harassment and sex discrimination of the Plaintiffs, and all others similarly situated, was in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### Violation of the New York State Human Rights Law – Racial Discrimination

161.   Plaintiffs reallege each and every allegation made in paragraphs 1 through 160 of this Complaint.

162.    Defendants had a policy, pattern and practice of condoning and encouraging unwelcome acts and verbal comments of a racial nature and otherwise fostering a racially hostile work environment.

163.    Plaintiffs were forced to work in a racially hostile work environment and subjected to unlawful discrimination based on race.

164.    The racial remarks and conduct to which the Plaintiffs were subjected were both unwelcome and severe or pervasive.

165.    Defendants' racial harassment and race discrimination of the Plaintiffs were in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

## AS AND FOR THE NINTH CAUSE OF ACTION

### Violation of the New York City Human Rights Law – Racial Discrimination

166.    Plaintiffs, individually and on behalf of all others similarly situated, reallege each and every allegation made in paragraphs 1 through 165 of this Complaint.

167.    Plaintiffs were forced to work in a racially hostile work environment and subjected to unlawful discrimination based on race.

168.    Defendants' racial harassment and race discrimination of the Plaintiffs, and all others similarly situated, was in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*

## AS AND FOR A TENTH CAUSE OF ACTION

### Violation of Section 1981

169.    Plaintiffs reallege each and every allegation made in paragraphs 1 through 168 of this Complaint.

170.    This Count is brought under Section 1981.

171.    Defendants' conduct constituted unlawful discrimination against Plaintiffs in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," and harassment, in violation of Section 1981.

172.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiffs' rights to be free from discrimination and was in violation of Section 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Gaskin, Miller and Stuckey, individually, on behalf of all others similarly situated and on behalf of the proposed Rule 23 Class, pray for judgment against Defendants SCE Group Inc. doing business as Sin City Cabaret, Konstantine ("Gus") Drakopoulos and Kevin Wells as follows:

A.    For Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the proposed Rule 23 Class and appoint Class Representatives and their counsel to represent the Class;

B.    A preliminary and permanent injunction against Defendants and their directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

C.    Declaring Defendants' conduct complained of herein to be in violation of the Plaintiff and the putative Class's rights as secured by the New York State Miscellaneous Industries and Occupations Wage Order, N.Y. Comp. Codes R. & Regs. tit. 12, § 146 and the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.* and the New York Labor

Law §§ 190 *et seq.*;

D.      Directing Defendants to compensate the Plaintiffs and the putative Class for all hours worked;

E.      Directing Defendants to pay all earned and unpaid overtime premium pay to Plaintiffs and the putative Class;

F.      Directing Defendants to repay all amounts deducted from wages to Plaintiffs and the putative Class;

G.      Directing Defendants to repay all unlawfully misdirected tips to Plaintiffs and the putative Class;

H.      Directing Defendants to pay all earned spread of hours pay to Plaintiffs and the putative Class;

I.      Directing Defendants to compensate all uniform and uniform maintenance costs pay all to Plaintiffs and the putative Class;

J.      Directing Defendants to provide the required wage notices;

K.      Directing Defendants to pay Plaintiffs and the putative class additional amounts as liquidated damages because of Defendants' willful violations of the FLSA, and NYLL;

L.      Awarding Plaintiffs and class members damages under the NYSHRL and NYCHRL;

M.      Awarding Plaintiffs and class members punitive damages under the NYCHRL;

N.      Awarding the Plaintiffs back wages due to constructive discharge and/or unlawful termination and for retaliation under the NYSHRL and NYCHRL;

O.      Awarding the Plaintiffs damages, including punitive damages, for pain, suffering, humiliation and emotional distress suffered in relation to the intentional tort claims;

P.      Awarding Plaintiffs and the putative Class all pre-judgment interest;

Q.      Awarding Plaintiffs and the putative Class the costs of this action together with reasonable attorneys' fees; and,

R.      Granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: Jericho, New York
      December 12, 2014

Respectfully submitted,

By:

Lizabeth Schalet
schalet@lipmanplesur.com
Robert D. Lipman
lipman@lipmanplesur.com
David A. Robins
robins@lipmanplesur.com
Lipman & Plesur, LLP
500 North Broadway, Suite 105
Jericho, NY 11753-2131
Telephone:      (516) 931-0050
Facsimile:      (516) 931-0030